UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:24-CR-60130-DIMITROULEAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RONALD HAMPTON,

    Defendant.

_____/

**PRETRIAL DETENTION ORDER**

Pursuant to 18 U.S.C. § 3142, commonly known as the Bail Reform Act of 1984, the Court held a hearing on December 10, 2024, to determine whether Defendant Ronald Hampton should be detained prior to trial. Assistant United States Attorney Lawrence LaVecchio appeared on behalf of the Government. Special Agent Juliet Fresnillo with the Bureau of Alcohol, Tobacco, Firearm and Explosives appeared. Assistant Federal Public Defender Huda Ajlani-Macri appeared on behalf of Defendant, who was also present.

A. INTRODUCTION

Defendant is charged by Indictment with three counts of distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and one count of possession and transfer of a machine gun, in violation of 18 U.S.C. § 922(o)(1). DE 3. If convicted on a distribution of a controlled substance count, Defendant faces a mandatory minimum sentence of 10 years' imprisonment and a maximum of life. If convicted on the possession and transfer of a machine gun count, Defendant faces a mandatory minimum sentence of 10 years' imprisonment. The

Government moved under 18 U.S.C. § 3142(f)(1)(C) for Defendant's pretrial detention on the basis that he poses a danger to the community and a risk of flight. Additionally, under 18 U.S.C. § 3142(e)(3)(A), the Government contended that a rebuttable presumption exists that no condition or combination of conditions will reasonably assure Defendant's appearance and the safety of the community.

### B. FINDINGS OF FACT

During the hearing, the Court took judicial notice of the Indictment and the Pretrial Services Report. The Government proffered additional information on the record, and Special Agent Fresnillo testified under oath. The Court considered all of the evidence in making its findings.

#### 1. The Government's Proffer

The Government proffered that Defendant sold methamphetamine on three occasions and sold switches on one occasion. A switch is a device used to transform a semi-automatic firearm into a fully automatic firearm. The first transaction was between Defendant and a cooperating witness ("CW") working with law enforcement. Defendant and the CW arranged the purchase of two ounces of methamphetamine on recorded phone calls, and the transaction between the CW and Defendant inside of the CW's car was audio and video recorded. During this first sale, Defendant stated he could get more methamphetamine for the CW, and the two talked about the purchase of switches. The methamphetamine from the first transaction tested positive for 54.49 grams of methamphetamine with a purity of 97%.

The CW arranged a second transaction with Defendant over recorded phone calls and arrived at an agreed location with an undercover agent ("UA"), who was wearing an audio and video recording device. Defendant entered the UA's car, and the UA purchased five ounces of

methamphetamine from Defendant and also asked about potentially purchasing some switches. Defendant said he could get the UA switches and even offered a money-back guarantee for the switches if they did not work. The methamphetamine purchased at the second transaction tested positive for 137.49 grams of methamphetamine with a purity of 96%.

The UA arranged the third transaction with Defendant, and Defendant indicated to the UA that he could get four switches along with more methamphetamine. Once again, the UA and the UA's car were equipped with audio and video recording devices. Defendant entered the UA's car and provided the UA with four switches and several bags of methamphetamine. The methamphetamine purchased at the third transaction tested positive for 137.6 grams of methamphetamine with a purity of 99%. Law enforcement also tested the purchased switches, and law enforcement's firearm expert opined that the devices were those used for the sole purpose of converting semi-automatic weapons into fully automatic machine guns and provided a video of the switches in use. Defendant was arrested sometime after the third transaction and admitted to selling methamphetamine but not machine guns.

   **2. Special Agent Fresnillo's Testimony**

Special Agent Fresnillo adopted the Government's proffer as part of her testimony. Special Agent Fresnillo further testified that the CW asked for two ounces of methamphetamine for the first transaction, but she was unaware who suggested five ounces for the second transaction. The video and audio recordings of the transactions were clear and show Defendant. The UA was the one who asked Defendant about switches, and law enforcement was not aware of any prior firearm offenses Defendant might have committed. Law enforcement tested the switches, and all of them worked, but two malfunctioned. The reason it took a while for the Marshals to apprehend Defendant was that he was homeless and without a fixed location, and the difficulty in finding

Defendant was due to those circumstances and not due to any effort by him to elude law enforcement. The CW and UA never expressed any fear when meeting Defendant, and Defendant was cooperative with law enforcement and acknowledged that he sold drugs after being arrested and receiving his *Miranda* warnings.

### C. THE PARTIES' ARGUMENTS REGARDING DETENTION

The Government moved under 18 U.S.C. § 3142(f)(1)(C) for Defendant's pretrial detention on the basis that he poses a danger to the community and a risk of flight. Additionally, under 18 U.S.C. § 3142(e)(3)(A), the Government contended that a rebuttable presumption exists that no condition or combination of conditions will reasonably assure Defendant's appearance and the safety of the community.

The Government argued in support of detention that Defendant faces a 10-year mandatory minimum sentence and a potential guideline range of 188–235 months and that the evidence against him is strong, seeing as the transactions were audio and video recorded. The Government also contended that the switches Defendant sold are extremely dangerous and used for the sole purpose of killing people and that Defendant bragged about having customers lining up to buy switches from him. Additionally, the Government asserted that Defendant has a lengthy criminal record with violations of release, which indicates that he cannot or will not follow the directions of the Court if given a bond. Lastly, the Government maintained that Defendant cannot overcome the presumption of detention that applies in this case.

Defense counsel argued in rebuttal that Defendant never evaded law enforcement and that he has no history of violence or evading law enforcement. Additionally, Defendant is a lifetime resident of South Florida. Defense counsel also contended that the length of time it took to indict and arrest Defendant indicates that law enforcement did not view him as a danger to the

community. Lastly, defense counsel noted that Defendant has congenital heart failure and should remain out on bond in order to receive treatment. Defense counsel suggested that an ankle monitor or placement into a halfway house or residential program could ensure that Defendant's location is always known. Defense counsel also noted that Defendant has family in Orlando.

### D. THE COURT'S CONCLUSIONS REGARDING DETENTION

The Court has considered the factors in 18 U.S.C. § 3142(g), the evidence, the parties' arguments, and the entire record. The Court concludes that Defendant should be detained pending trial for the reasons stated below and stated on the record during the hearing.

The Court finds that there is probable cause to believe that Defendant committed the crimes charged in the Indictment. Under 18 U.S.C. § 3142(e)(3)(A), a rebuttable presumption exists that no condition or combination of conditions will reasonably assure Defendant's appearance and the safety of the community if he is released. Regardless of this presumption, the Government still retains the burden of demonstrating that detention is appropriate.

The nature and circumstances of the charged offenses are that Defendant is charged with distribution of a controlled substance and control/transfer of a machine gun and faces a 10-year mandatory minimum sentence and a potential guideline range of 188–235 months. The charged offenses involve the sale of methamphetamine on three separate transactions to the CW or UA. This factor weighs in favor of detention. The weight of the evidence is great since all transactions were audio and video recorded. This factor weighs in favor of detention. Defendant's history and characteristics are that he is a lifelong resident of Southern Florida, is homeless, and has a serious medical condition. However, Defendant's history and characteristics also include an extensive criminal history between 1997 and 2016. Defendant's criminal history shows approximately 10 criminal convictions, which include numerous violations of pretrial release, probation, and

community control dating back to February 1997. This factor weighs in favor of detention. Lastly, concerning the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release, the Court finds that Defendant's charged offenses indicate that he poses a danger to the community. During one of the drug transactions, Defendant allegedly possessed and transferred four devices used to transform a semi-automatic firearm into a fully automatic firearm. The presence of the switches further indicate danger. This factor also weighs in favor of detention. Accordingly, the Court finds by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Defendant's appearance. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if he is released.

Accordingly, it is hereby **ORDERED** that Defendant Ronald Hampton be remanded to the custody of the United States Marshals. The Court directs that Defendant be afforded reasonable opportunity for private consultation with counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 17th day of December, 2024.

_____
PANAYOTTA AUGUSTIN-BIRCH
UNITED STATES MAGISTRATE JUDGE